# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 01-2076

Virginia S. Crain, Appellant,

v.

Anthony J. Principi,
Secretary of Veterans Affairs, Appellee.

On Appeal from the Board of Veterans' Appeals

(Argued April 16, 2003                           Decided  July 10, 2003   )

*Jeany Mark*, of Washington, D.C., for the appellant.

*Kenneth A. Walsh*, with whom *Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Brian B. Rippel*, Deputy Assistant General Counsel, all of Washington, D.C., were on the brief, for the appellee.

Before KRAMER, *Chief Judge*, and FARLEY and STEINBERG, *Judges*.

STEINBERG, *Judge*: The appellant, through counsel, seeks review of an October 31, 2001, Board of Veterans' Appeals (Board or BVA) decision that determined that a June 27, 2000, Substantive Appeal to the Board was not timely filed in order to appeal an October 1994 decision of a Department of Veterans Affairs (VA) regional office (RO). Record (R.) at 3, 6. The appellant filed a brief, and the Secretary filed a brief in response, to which the appellant filed a reply. For the reasons set forth below, the Court will reverse the Board decision and remand the matter to the Board for adjudication on the merits of the appellant's claim for an earlier effective date (EED) for her award of VA dependency and indemnity compensation (DIC).

## I. Relevant Background

Appellant Virginia S. Crain is the widow of veteran Marvin E. Crain, who served on active duty in the U.S. Air Force from August 1947 to June 1955 and from November 1955 to March 1969, including service in Vietnam during the Vietnam conflict. R. at 2, 19. In February 1982, the veteran

died, and, in October 1994, a VARO granted the appellant's DIC claim based on the veteran's death from a service-connected condition and assigned an effective date of February 1, 1985. R. at 9; *see also* R. at 19-20. On October 7, 1994, the RO provided the appellant with notice of the RO decision. R. at 9. On October 24, 1994, the appellant filed a Notice of Disagreement (NOD) with the RO; she requested an effective date of February 1982, the veteran's date of death. R. at 12. On the NOD, she listed her address as "13230 E. 32 Court[,] Tulsa, OK. 74134". R. at 12.

In a November 17, 1994, letter to the appellant, the RO acknowledged receiving the NOD and enclosed both a Statement of the Case (SOC) and a blank VA Form 9, Substantive Appeal to BVA (hereinafter Form 9 Appeal). R. at 15-21. (A copy of the blank Form 9 Appeal is not included in the record on appeal (ROA).) The letter was addressed to the appellant as follows: "13230 East 32*and* Court[,] Tulsa, OK  7*3*134". R. at 15 (emphasis added). On June 7, 2000, the RO received a letter from the appellant in which she requested a copy of the SOC and attachments; she noted that she had not received them and listed her address as: "13230 E 32 Ct[,] Tulsa, OK. 74134". R. at 23. That same month, the RO mailed a copy of the SOC to the appellant. *See* R. at 23. On June 27, 2000, the RO received from the appellant a Form 9 Appeal in which she requested an EED for her DIC award and gave her address as "13230 E 32nd CT[,] Tulsa, OK 74134". R. at 26.

In July 2000, the RO notified the appellant that it was unable to accept her appeal because it was not timely filed. R. at 28. (This communication and all subsequent correspondence in the ROA between the appellant and VA contained, by and large, the following addresses: "13230 E 32ND CT[,] TULSA, OK  74134" (R. at 28, 31, 44) or "13230 East 32nd Ct.[,] Tulsa, OK  74134" (R. at 33, 42, 52).) That same month, the appellant filed an NOD as to that RO decision. R. at 31. The RO issued an SOC in November 2000. R. at 33-39. On November 13, 2000, the appellant filed a Substantive Appeal to the Board; she asserted that she had never received notification of the October 1994 RO decision or the form to file her appeal and that she had not been informed of her rights or the appeal process. R. at 42. Thereafter, the appellant testified under oath before the Board at a video conference hearing. R. at 60-68.

In the October 2001 BVA decision here on appeal, the Board determined that the appellant had not filed a timely Substantive Appeal as to the RO's October 1994 decision, because the Form 9 Appeal that the RO received in June 2000 was not received within the statutory time limit. R. at

3, 6. The Board found that in November 1994 the RO had sent the SOC to the appellant, that the SOC was not returned to the RO as undeliverable, and that the appellant did not file a Substantive Appeal until June 27, 2000. R. at 4, 5. The Board concluded that the appellant's contention that she did not receive the November 1994 SOC was insufficient to rebut the presumption of regularity, i.e., "'the presumption that the notice was sent in the regular course of government action.'" R. at 5-6 (October 2001 Board decision quoting *Schoolman v. West*, 12 Vet.App. 307, 310 (1999)). In addition, the Board noted that there was no evidence that the appellant had made any attempt to determine the status of her claim after she filed her NOD in November 1994. R. at 6. The Board stated: "The RO did not receive any correspondence from the appellant until June 2000 . . . ." R. at 6.

On appeal to this Court, the parties agree that an incorrect ZIP Code was used in VA's November 1994 mailing, but they disagree as to whether VA's use of an incorrect ZIP Code in the appellant's address in the cover letter accompanying the SOC rebuts the presumption of regularity in the mailing of the SOC and thus tolls the appeal period. Appellant's (Appel.) Brief (Br.) at 5-9; Secretary's (Sec'y) Br. at 4-6. The parties also disagree as to whether the Board erred in not discussing the Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096 (2000). Appel.'s Br. at 9-10; Sec'y Br. at 6.

On March 31, 2003, prior to oral argument, the Court directed the parties each to submit a supplemental memorandum addressing the impact, if any, of U.S. Postal Service (USPS) *Domestic Mail Manual* (DMM) section A010 (General Addressing Standards) on the jurisdictional issue in this case. *Crain v. Principi*, U.S. Vet. App. No. 01-2076, 2003 WL 1795558 (Mar. 31, 2003) (per curiam order) (citing DMM § A010 (General Addressing Standards) (Jan. 9, 2003), *available at* http://pe.usps.gov, and *Evans (Janet) v. Principi*, 17 Vet.App. 41, 47-48 (2003) [hereinafter *Evans*] (relying on DMM § S912, ¶ 2.5(d) (Jan. 9, 2003) containing procedures for postmarking certified mail receipt in concluding that postmark stamp on such receipt when initially attached to envelope was evidentiary equivalent of postmark on envelope itself and thus satisfied requirement in 38 U.S.C. § 7266(c)(2) of "postmark stamped on the cover in which the notice [of appeal] is posted")).

On April 11, 2003, the parties submitted supplemental memoranda. The appellant argues that the standards enunciated in section A010 of the DMM are irrelevant to her claim and that the

controlling law in this case is 38 U.S.C. § 7105 and 38 C.F.R. § 19.30. Memorandum (Mem.) at 2-5. She also states that the equitable-tolling doctrine does not apply to this case because that doctrine applies only to actions of claimants and not to erroneous actions by the Secretary. *Id.* at 6-7. She states that the "only appropriate outcome here is a determination by the Court that the Secretary's use of an incorrect [ZIP C]ode was a legally significant error that kept the denial of her claim from becoming final" and that the 60-day period for her to file a Substantive Appeal did not commence until June 19, 2000, when she was mailed a copy of the SOC. *Id.* at 6-7. The appellant also argues that if the Court considers DMM section A010, the standards set forth therein support her position. Mem. at 8. In conjunction with her supplemental memorandum, the appellant filed an unopposed motion to supplement the ROA with a copy of a VA envelope mailed to the veteran by use of penalty mail in 1973; the Court granted that motion on April 11, 2003.

In his supplemental memorandum, the Secretary contends that the DMM has no impact on this case independent of *Santoro v. Principi*, 274 F.3d 1366 (Fed. Cir. 2001), which relied in part on the DMM. Mem. at 1-2. The Secretary states that *Santoro* stands for the proposition that because, in some cases, the DMM allows omission of the ZIP Code, an error in the ZIP Code is inconsequential for purposes of the appeal period in section 7105(d)(3) whether or not the USPS otherwise requires a ZIP code on a particular piece of mail. *Id.* at 2. Relying on DMM section F030 (entitled "Address Correction, Address Change, FASTforward, and Return Services"), the Secretary contends that even if a ZIP Code error did interfere with delivery, the USPS would either correct the envelope address or return the envelope to VA as undeliverable. *Ibid.* Finally, the Secretary argues that this Court's decision in *Davis (Fred A.) v. Principi*, 17 Vet.App. 29 (2003) (hereinafter *Davis*), supports his position that, in the absence of an envelope showing that the mailing was returned as undeliverable, it must be presumed that the USPS delivered the 1994 SOC to the appellant. Mem. at 4-5. In April 2003, following oral argument and at the direction of the Court, the parties filed a joint response and attached relevant sections of the 1994 USPS DMM.

## II. Analysis

### A. Applicable Law

#### 1. Statutory and Regulatory Authorities

Pursuant to section 7105, the filing of an NOD initiates appellate review in the VA administrative adjudication process, and the request for appellate review is completed by the claimant's filing of a Substantive Appeal after an SOC is issued by VA. 38 U.S.C. § 7105 (a), (d)(1), (d)(3); *see Rowell v. Principi*, 4 Vet.App. 9, 14 (1993). Once a claimant has filed an NOD, the responsibility shifts to the RO to issue an SOC; the claimant must then file a Substantive Appeal to perfect an appeal to the BVA. *See* 38 U.S.C. § 7105(d)(1), (d)(3); *Rowell*, 4 Vet.App. at 16. "A Substantive Appeal consists of a properly completed VA Form 9, 'Appeal to Board of Veterans' Appeals,' or correspondence containing the necessary information." 38 C.F.R. § 20.202 (2002); *see YT v. Brown*, 9 Vet.App. 195, 199 (1996). Section 7105(d)(3) provides: "Copies of the [SOC] . . . will be **submitted** to the claimant and to the claimant's representative, if there is one. The claimant will be afforded a period of sixty days from the date the [SOC] is **mailed** to file the formal appeal", 38 U.S.C. § 7105(d)(3) (emphasis added), or may file the appeal within the remainder of the one-year period beginning on the date on which notice of the RO decision being appealed was mailed, whichever period ends later, 38 C.F.R. § 20.302(b) (2002); *see Mason (Sangernetta) v. Brown*, 8 Vet.App. 44, 55 (1995). The regulations further provide that the SOC "will be forwarded to the appellant **at the latest address of record** and a separate copy provided to his or her representative (if any)." 38 C.F.R. § 19.30 (2002) (emphasis added). The 2002 C.F.R. provisions quoted above have not changed from those in effect in 1994. *See* 38 C.F.R. §§ 19.30, 20.202, 20.302(b) (1993).

#### 2. Presumption of Regularity of Mailing

This Court has held that the law presumes the regularity of the administrative process "'in the absence of clear evidence to the contrary.'" *Mindenhall v. Brown*, 7 Vet.App. 271, 274 (1994) (quoting *Ashley v. Derwinski*, 2 Vet.App. 62, 64-65 (1992) [hereinafter *Ashley I*]); *see Mason*, 8 Vet.App. at 53. The presumption of regularity of the administrative process "'in the absence of clear evidence to the contrary'" applies to VA's mailing an SOC in the same manner that it applies to the BVA's mailing a decision. *See YT*, 9 Vet.App. at 199 (quoting *Mindenhall*, *supra*, and citing

5

*Ashley I*, *supra*). In order for this presumption to attach, VA must mail notice to the latest address of record. *See Ashley v. Derwinski*, 2 Vet.App. 307, 309 (1992) [hereinafter *Ashley II*] (as to mailing of BVA decision pursuant to section 7104(e)); *see also Schoolman*, 12 Vet.App. at 310 (as to mailing of VA notice informing appellant of possible entitlement to DIC); *Saylock v. Derwinski*, 3 Vet.App. 394, 395 (1992) (as to mailing of RO decision). In *Ashley II*, the Court stated as follows:

> [W]here an appellant submits clear evidence to the effect that the BVA's "regular" mailing practices are not regular or that they were not followed, the Secretary is no longer entitled to the benefit of the presumption and the burden shifts to the Secretary to establish that the BVA decision was mailed to the veteran and the veteran's representative, if any, as required by 38 U.S.C. § 7104(e).

*Ashley II*, 2 Vet.App. at 309*; see Ashley I*, 2 Vet.App. at 66 (quoting *United States v. Roses*, 706 F.2d 1563, 1567 (Fed. Cir. 1983) ("'The presumption [of official regularity may also] operate[ ] in reverse. If [a mailing] appears irregular, it is irregular, and the burden shifts to the proponent to show the contrary'").

An assertion of nonreceipt of a VA decision alone does not establish the "clear evidence" needed to rebut the presumption of regularity of the mailing. *Ashley II*, 2 Vet.App. at 309; *cf. Chute v. Derwinski*, 1 Vet.App. 352, 353 (1991) (per curiam order) (holding that presumption of regularity was rebutted where Secretary could not show that VA had mailed notice of BVA decision and appellant's letters appeared to reflect that he was seeking information regarding status of BVA review, thus indicating that he had not received that notice). This Court, however, has held that VA's use of an incorrect address for a claimant constitutes the "clear evidence" needed to rebut the presumption of regularity that the BVA properly mailed notice of its decision to the claimant under section 7104(e), which requires the notice of a BVA decision to be sent to the claimant at the claimant's "last known address" of record. *Fluker v. Brown*, 5 Vet.App. 296, 298 (1993); *Piano v. Brown*, 5 Vet.App. 25, 26-27 (1993) (per curiam order) (holding that BVA's use of incorrect address in mailing BVA decision to appellant constituted clear evidence rebutting presumption of regularity inasmuch as it showed that mailing "appeared to be 'irregular'" (quoting *Ashley II*, 2 Vet.App. at 309)).

This Court also has held that the presumption of regularity of mailing has been rebutted

where a copy of a BVA decision that is mailed to a claimant at his or her last known address is returned as undeliverable by the USPS and the claimant's claims file discloses other possible and plausible addresses that were available to the Secretary at the time of the BVA decision. *Cross v. Brown*, 9 Vet.App. 18, 19-20 (1996) (per curiam order). In order to rebut the presumption under current caselaw where the mailing *was* made to the latest address of record, the appellant must establish **both** that the mailing was returned as undeliverable **and** that there were other possible and plausible addresses available to the Secretary at the time of the BVA decision. *Davis*, 17 Vet.App. at 37 (citing *Woods v. Gober*, 14 Vet.App. 214, 220-21 (2000), *Cross*, *supra*, and *Thompson (Charles) v. Brown*, 8 Vet.App. 169, 178-79 (1995)).

Once the presumption has been rebutted, the burden shifts to the Secretary to show that regular mailing practices were followed in mailing the document in question in accordance with applicable law and regulation – here, the Secretary must demonstrate that the SOC was mailed to the claimant as required by section 7105(d)(3) and *YT*, 9 Vet.App. at 199, or that the appellant actually received the SOC. *See Ashley II*, 2 Vet.App. at 309. If the Secretary fails to carry this burden, the period for filing a Substantive Appeal does not begin to run until the defect is cured (i.e., when the claimant actually receives the SOC). *See id.* at 311.

### B. Application of Law to Facts

In the instant case, after the RO in October 1994 granted the appellant's DIC claim and assigned an effective date, the RO sent to her a letter dated October 7, 1994, to notify her of its October 1994 decision. The following month, the appellant filed with the RO an NOD listing her address as "13230 E. 32 Court[,] Tulsa, OK. 74134". R. at 12. The RO then mailed the SOC to her at the following address: "13230 East 32*and* Court[,] Tulsa, OK 7*3*134". R. at 15 (emphasis added). Nothing in the ROA reflects that the SOC was not mailed or that it was returned as undeliverable. When the appellant next inquired about her claim in June 2000, the address she used was the one she had previously listed on her October 1994 NOD. The RO then sent her a copy of the SOC on June 19, 2000. If the original SOC was properly mailed, the appellant had until October 1995, a year after she was sent the October 1994 RO decision, to perfect her appeal. (In this case, the one-year period, calculated from the date on which the RO decision was mailed to the claimant, for filing the Substantive Appeal under § 20.302(b), would be longer than the alternative 60-day

period, calculated from the date on which the November 1994 SOC was mailed, under section 7105(d)(3) and § 20.302(b).) The appellant did not file a Substantive Appeal until June 27, 2000, which was within 60 days after her receipt of the SOC mailed to her on June 19, 2000.

The appellant contends that, by using an incorrect ZIP Code in mailing the SOC to her in 1994, the RO used an incorrect address for that mailing and that she never received the November 1994 SOC. Br. at 5. The appellant argues that the RO's use of an incorrect address thus rebuts the presumption that VA properly discharged its official duties in mailing the SOC to her. *Id.* at 6-7. She contends, therefore, that the period for filing a Substantive Appeal should be tolled during the period in which she did not receive the SOC and that her June 2000 Substantive Appeal should be deemed timely filed pursuant to section 7105(d)(3), § 20.202, and § 20.302(b). *Id.* at 8. She urges the Court to reverse the Board's October 2001 decision because there is no plausible basis for its conclusion that VA discharged its duties in mailing the SOC to her in November 1994 given that VA used a plainly incorrect address. *Id.* at 8-9.

The Secretary maintains that the Court should affirm the BVA decision because the appellant's June 2000 Form 9 Appeal was untimely and that she did not rebut the presumption of regularity. Br. at 4-6. The Secretary relies on *Jones (Raymond) v. West*, 12 Vet.App. 98, 101-02 (1998) (hereinafter *Jones*), and *Santoro*, 274 F.3d at 1368-70, for the proposition that VA's use of an incomplete address or incorrect ZIP Code, coupled with a claimant's assertion that he did not receive notice of a decision, does not constitute "clear evidence" necessary to rebut the presumption of regularity. *Id.* at 5. The Secretary contends that the appellant's argument is weaker than was the claimant's in *Jones* because *Santoro* suggests that the address used by VA in the instant case was not "incomplete". *Id.* at 6. In rebuttal, the appellant contends that *Jones* and *Santoro* are distinguishable from the instant case. Reply Br. at 1-3.

The issues presented here are whether evidence that the RO used an incorrect ZIP Code in mailing the SOC to the appellant constitutes the "clear evidence" that is needed to rebut the presumption of regularity and, if so, whether the Secretary met his burden to establish that the SOC was mailed to the appellant in accordance with applicable law and regulation. As an initial matter, these questions are questions of law, which this Court reviews de novo. *Cf. Bagby v. Derwinski*, 1 Vet.App. 225, 227 (1991) (noting that although "the underlying determination may be factual[,]

8

. . . whether those facts are sufficient to satisfy the statutory requirement that clear and unmistakable evidence be shown is a legal determination subject to *de novo* review"). This Court is required to make an independent determination whether the record contains clear evidence of sufficient weight to rebut the presumption of regularity and whether the Secretary has presented evidence showing that he complied with his mailing obligation under the statute or that there was actual receipt. *See Woods*, 14 Vet.App. at 220-21 (concluding that presumption as applied to Secretary's mailing of RO notice of decision to veteran was rebutted and Secretary failed to meet his burden); *Piano*, 5 Vet.App. at 26-27 (holding that, after presumption of regularity of mailing was rebutted, Secretary did not meet his burden of establishing that BVA decision was mailed to veteran as required by section 7104(e)); *Ashley II*, 2 Vet.App. at 311 (same).

### 1. *Rebuttal of Presumption of Regularity of Mailing*

The Court holds that the evidence showing that the RO used an incorrect ZIP Code for the appellant, in conjunction with the appellant's assertion of nonreceipt of the November 1994 SOC, constitutes the clear evidence that is needed to rebut the presumption of regularity; the address for the appellant that was used by the RO to mail the 1994 SOC appears "irregular". *Ashley II*, 2 Vet.App. at 309. This Court's opinions in *Piano* and *Fluker*, both *supra*, are dispositive here. In *Piano*, this Court held that the Board's use of an "incorrect address" in mailing to the appellant a copy of a BVA decision constituted the "clear evidence" that was needed to rebut the presumption of regularity that the Board properly mailed notice of its decision to him at his "last known address" as required by section 7104(e). *Piano*, 5 Vet.App. at 27. There, the address for the appellant that was used on the Board's transmittal letter was incorrect; although the appellant's correct address was "3313 Isabela, Philippines", the address for the appellant on the BVA transmittal letter was "2313 Isabela, Phillippines". *Id.* at 26. The Court concluded that this one-digit error in the street address showed that "the mailing . . . appeared to be 'irregular.'" *Id.* at 27 (citing *Ashley II*, *supra*).

Similarly, the Court in *Fluker*, *supra*, held that a BVA mailing to an incorrect address for the appellant constituted the "clear evidence" necessary to rebut the presumption of regularity, that is, that the Board properly mailed notice of its decision as required by section 7104(e). *Fluker*, 5 Vet.App. at 298. In *Fluker*, the envelope in which VA mailed the BVA decision was addressed to "244 ***Allen St., East Montevallo***, AL 35115", whereas the appellant's correct address was "244

*Island St. East, Montevallo*, AL 35115." *Fluker*, 5 Vet.App. at 298 (emphasis added).

In the instant case, the RO's use of an incorrect ZIP Code for the appellant rendered incorrect the address used to mail the SOC. As to the incorrect ZIP Code, the Court takes judicial notice that the ZIP Code for Tulsa, Oklahoma, is 74134, whereas the ZIP Code used by the RO, 73134, is for Oklahoma City, Oklahoma, and that, according to http://www.mapquest.com, the driving distance between these two cities is approximately 112 miles. *See Smith (Brady) v. Derwinski*, 1 Vet.App. 235, 238 (1991) (holding that "[c]ourts may take judicial notice of *facts* not subject to reasonable dispute") (citing FED. R. EVID. 201(b)). Moreover, the RO used a street address for the appellant that may be problematic. The address for the appellant that was used on the SOC transmittal letter was "13230 East 32*and* Court[,] Tulsa, OK  7*3*134", R. at 12 (emphasis added), whereas the appellant's address of record was "13230 E. 32 Court[,] Tulsa, OK. 74134". *Cf. Piano* and *Fluker*, both *supra*.

At oral argument, the Secretary attempted to distinguish *Piano* from the instant case based on the Philippines destination of the VA mail in *Piano*. He argued that, because in *Piano* the presumption of regularity of mailing does not attach to the actions of the post office in the Philippines given that the USPS is no longer involved once the mail arrives in the Philippines, it cannot be presumed that the mail reaches its destination there. The Secretary's attempt to limit the holding of *Piano* to VA mail sent to a claimant in the Philippines is not persuasive; there is nothing in the Court's opinion in *Piano* that indicates that its holding is so limited.

Although the Court's opinions in *Piano* and *Fluker*, both *supra*, involved neither the mailing of an SOC nor § 19.30, that regulation required VA to forward the SOC in the instant case to the "latest address of record". We find no basis for distinguishing the address requirement in regulation § 19.30, "latest address of record", from the "last known address" requirement in section 7104(e). The Court has routinely applied its section 7104(e) caselaw to RO mailings to VA claimants. *See*, *e.g.*, *YT*, *supra* (applying to mailing of SOC the section 7104(e) statutory mailing obligation for BVA decision); *see also Jones* and *Mindenhall*, both *supra*; *Hyson v. Derwinski*, 5 Vet.App. 262, 264-65 (1993); *Saylock*, *supra*. The "latest address of record" for the appellant was, at the time of the SOC mailing (and still is), "13230 E. 32 Court[,] Tulsa, OK. 74134". This address was listed as her address on her NOD, the last correspondence from the appellant to VA immediately prior to the issuance of the SOC. The RO, however, sent the SOC to the appellant at the wrong ZIP Code. The

Court concludes that the ZIP Code used by VA in forwarding the SOC to the appellant did not match that in "latest address of record". Because VA used an address other than the one "of record", VA failed to comply with § 19.30. *See Schafrath v. Derwinski*, 1 Vet.App. 589, 592-93 (1991) (holding that VA must follow its own regulations).

Nor do we find persuasive the Secretary's reliance on *Santoro*, *supra*, for the proposition that VA's use of an incorrect ZIP Code, coupled with a claimant's assertion that he did not receive notice of a decision, does not constitute the "clear evidence" necessary to rebut the presumption of regularity. The instant case is distinguishable from *Santoro* in numerous respects. In *Santoro*, the United States Court of Appeals for the Federal Circuit (Federal Circuit) held that a Notice of Appeal (NOA) addressed to this Court with an incorrect ZIP Code was, nonetheless, "properly addressed [to the Court]" for purposes of section 7266(a)(3)(B) (now section 7266(c)(2)), which provides that an NOA is deemed received by the Court on the date of the USPS postmark on the envelope, if the envelope is "properly addressed". *Santoro*, 274 F.3d at 1370. This Court had dismissed the appeal for lack of jurisdiction on the basis that the appeal was untimely. The Federal Circuit reversed.

In *Santoro*, the appellant addressed his NOA to this Court using the ZIP Code "20420", the ZIP Code for the VA Office of General Counsel (VAGC), rather than "20004", the ZIP Code for this Court. The USPS erroneously delivered the NOA to the VAGC within the 120-day filing deadline for filing appeals to this Court, and the VAGC signed for and accepted the NOA. *Santoro*, 274 F.3d at 1368. The Federal Circuit stated: "Construing the statutory term according to its normal usage, a 'proper' address would be 'characterized by appropriateness or suitability' for its intended purpose." *Id.* at 1370 (quoting AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th ed. 2000)). The court further stated that "[t]he purpose of an address is to supply information for delivery of mail to its intended destination. Hence, an address containing errors inconsequential to delivery is still proper." *Ibid.* In noting that the address contained an error that caused misdelivery of the appeal notice, the Court determined: "Misdelivery alone, however, should not distinguish consequential from inconsequential error. Even perfectly addressed mail at times suffers misdelivery. **Where an address, *ex ante*, enables delivery to the intended destination, then that address is proper and any error is inconsequential**." *Id.* at 1370 (boldface emphasis added; italics in original).

In support of its conclusion that Santoro's use of an incorrect ZIP Code was an

"inconsequential error" that did not prevent his NOA from being "properly addressed" under section 7266, the court noted that the USPS has promulgated regulations regarding standards for deliverable mail. *Santoro*, 274 F.3d at 1370 (citing 39 C.F.R. § 111.5 (2001)). Those regulations incorporated by reference the USPS DMM. The court noted that the DMM "provides, *inter alia*, that a deliverable address need not contain a [ZIP C]ode at all." *Ibid.* (citing DMM § A010 but not quoting from DMM or citing to specific section within it). The court also identified other courts (state courts and the U.S. Tax Court) that have held that lack of a ZIP Code or an incorrect ZIP Code will not preclude mail from being "properly addressed."

    *Santoro*, *supra*, is distinguishable from the instant case on at least four grounds: First, the holding in *Santoro* pertains to section 7266(a), a statutory provision that is not involved here, regarding the obligation of a claimant to mail a timely NOA. In any event, the words "properly addressed" in section 7266(a) that were interpreted by the court in *Santoro* differ substantially from the words in the controlling statutory provision and regulation here, which are section 7105(d)(3), involving VA's obligation to "submit[]" to the claimant a copy of the SOC, 38 U.S.C. § 7105(d)(3), and § 19.30, requiring VA to "forward[]" the SOC to the claimant at the "latest address of record", 38 C.F.R. § 19.30. Second, *Santoro* involved the actions of an appellant attempting to seek judicial review of a VA decision and his use of an incorrect ZIP Code in addressing his NOA to the Court, whereas this case involves a duty imposed on the Secretary to comply with a statutory direction to submit an SOC to a claimant

and a duty he has imposed on himself to mail the SOC to the claimant's "latest address of record", 38 C.F.R. § 19.30; *see Schafrath*, *supra*.

    Third, *Santoro* was decided in the context of the pro-claimant nature of VA's administrative claims adjudication, and any extension of the holding in *Santoro* to limit VA's statutory obligations in forwarding an SOC to a claimant would be at odds with the nature of such adjudication. *See Jaquay v. Principi*, 304 F.3d 1276, 1288 (Fed. Cir. 2002) (en banc) (noting that "veteran-friendly nature of the veterans' benefit system counsels us to construe the diligence requirement as it applies to behavior during the non-adversarial stage of a claim for benefits in favor of the veteran"); *see also Santana-Venegas v. Principi*, 314 F.3d 1293, 1298 (Fed. Cir. 2002) (recognizing "non-adversarial and pro-claimant character" of veterans benefits adjudication).

12

Fourth, unlike the ZIP Code error in *Santoro*, which did not interfere with the ultimate delivery of the NOA to the intended destination (the Court), there is no evidence here that, despite the ZIP Code error, the SOC was delivered to its intended destination, and we thus have no basis for concluding that VA's error here was inconsequential. Although these four grounds are sufficient to distinguish *Santoro*, this Court also notes that the instant case involves not only the RO's use of an incorrect ZIP Code for the appellant, but also a street address that was imprecise. Although we believe that *Santoro* is readily distinguishable from the facts of the instant case, we recognize that some might perceive our decision here as an "under-ruling" of *Santoro*. *See Consol. Edison Co. of N.Y. v. United States Dep't of Energy*, 247 F.3d 1378, 1386 (Fed. Cir.) (Plager, J., concurring) ("This case confronts the court with a choice between a seemingly illogical Supreme Court rule, calling for a less-than-sensible result, on the one hand, or under-ruling the Supreme Court decision, here *Bowen v. Massachusetts*, 487 U.S. 879 (1988), on the other. This time the court has chosen the latter course. I cannot disagree; it remains to be seen whether the Supreme Court will."), *cert. denied*, 534 U.S. 1054 (2001). We believe, however, that there are sound grounds for distinguishing *Santoro* from the circumstances in the instant case.

Similarly, the Secretary's reliance on *Jones*, *supra*, is unavailing. In *Jones*, the Court held that an RO mailing of its decision to discontinue payment of benefits to "'912 Locust St.'" instead of "'912 Locust St. – Room 221'" did not constitute the "clear evidence" that rebuts the presumption of regularity in mailing. *Jones*, 12 Vet.App. at 101. The Court noted that the evidence showed that the veteran "had received at least one piece of [VA] correspondence [addressed to] 912 Locust St., without a room number, and the ROA contain[ed] no other correspondence mailed to the veteran at 912 Locust St. to which the veteran did ***not*** respond, and thus that could have supported his contention that he was not receiving mail at that address." *Ibid.* The Court stated that VA had no reason to believe that the address that it was using was insufficient, and the evidence showed that the veteran was in fact receiving mail sent to the address that VA was using. The Court concluded that the address was "incomplete" and, noting that the notice was not alleged to have been returned as undeliverable, concluded that the "irregularity of the missing room number alone" was insufficient to overcome the presumption of regularity. *Ibid.* The instant case is distinguishable from *Jones*: Unlike in *Jones*, where the veteran had responded to at least one other communication from VA that

13

did not contain his room number, there is no evidence here suggesting that the appellant ever had received notices from VA that contained an incorrect ZIP Code or imprecise street address as part of her address.

Relying on this Court's opinion in *Davis*, *supra*, the Secretary next argues that (1) unless an envelope that is mailed to a claimant by VA is returned to VA by the USPS, it must be presumed that the USPS delivered the envelope to the appellant and (2) the presumption of regularity of mailing is therefore not rebutted. In *Davis*, this Court determined that the veteran had not rebutted the presumption of regularity of mailing where the VA mailing of a BVA decision was returned as undeliverable and there was no additional possible and plausible address for the claimant in the claims file at the time of the BVA decision. *Davis*, 17 Vet.App. at 38. Following receipt by VA of the returned mailing, the Board directed the RO to remail the decision when the correct address was ascertained. Subsequently, the claimant notified VA of his new address, and the RO successfully remailed the decision to the claimant at that new address. The Court rejected the appellant's argument that where notice of a BVA decision is returned as undeliverable, the judicial-appeal period is tolled until VA successfully mails that notice to the veteran at a correct, current address. *Id.* at 38-39. Because the veteran had filed his NOA more than 120 days after the unsuccessful original mailing, the Court concluded that it lacked jurisdiction over the appeal. In so concluding, the Court clarified that in a "returned as undeliverable" case, "once the Court determines that at the time of the BVA decision there was no additional address(es) in the claims file for VA to use to mail the BVA decision to the appellant, the Board is entitled to rely on the regularity of its mailing to the original address and the presumption of regularity has not been rebutted." *Id.* at 38.

This Court's *Davis* opinion has no application here because that case dealt with a situation not involved here, the return by the USPS to VA of a mailing as undeliverable when VA had no alternative address on file. The instant case involves VA's use of an incorrect address for the appellant in its mailing and does not concern VA's obligations following the return by the USPS of that mailing. The return of a VA mailing as undeliverable is not a prerequisite for a claimant attempting to rebut the presumption of regularity. *See Jones*, 12 Vet.App. at 101. As we stated in *Jones*, *supra*: "Having determined that VA generated and apparently mailed in due course notice of its decision to discontinue payment, and because that notice is not alleged to have been returned

14

as undeliverable by the Post Office . . . , the issue becomes whether the undisputed fact that the documents were mailed to '912 Locust St.' instead of '912 Locust St. – Room 221' is 'clear evidence' that rebuts the presumption of regularity." *Ibid.* Accordingly, where a mailing is not returned as undeliverable, the Court is still obliged to examine the correctness of the address used by VA in its mailing and determine whether the address used rebuts the presumption of regularity of mailing.

The Secretary also relies on the DMM to support the proposition that unless an envelope that is mailed to a claimant by VA is returned to VA by the USPS, it must be presumed that the USPS delivered the envelope to the appellant, and the presumption of regularity of mailing is thus not rebutted. Specifically, he argues that pursuant to the DMM even if a VA envelope contained an incorrect ZIP Code, the USPS would either correct the address on the envelope and deliver it or return the envelope to VA as undeliverable. He relies on DMM section F030, which provides in relevant part as follows: "***When possible***, . . . address correction is provided for First-Class Mail, Express Mail, Priority Mail, and third- and fourth-class mail. If the piece cannot be forwarded, it is returned with the address information or reason for nondelivery attached." DMM § F030 (Address Correction, Address Change, and Return Services) ¶ 1.3 (Apr. 10, 1994) (emphasis added).

As pointed out by the appellant, the DMM specifically qualifies the obligation of the USPS to provide address-correction services by using the phrase "[w]hen possible", and the DMM therefore provides no certainty that such address-correction service was provided in this instance. This Court's opinion in *Piano*, *supra*, which involved the Board's use of an incorrect address for the appellant, demonstrates that an envelope addressed incorrectly is not always returned by the USPS as undeliverable. *See Piano*, 5 Vet.App. at 26-27. The same is true of the facts in *Santoro*, where the envelope was misdelivered to an entity other than the addressee. *See Santoro*, 274 F.3d at 1368. The Secretary's argument simply ignores this Court's opinions in *Piano* and *Fluker*; there is no requirement that to rebut the presumption of regularity of mailing a claimant must show that a VA mailing was returned as undeliverable. To so hold would impose far too high a hurdle for a claimant because whether an undelivered mailing is retained for later use is solely within the control of the USPS and VA. Moreover, by relying on the DMM and the USPS to correct or return mail that is undeliverable as addressed, the Secretary is essentially attempting to shift to the USPS his statutory

15

and regulatory obligations to submit, forward, or mail VA notices and decisions to the claimant's "latest address of record", 38 C.F.R. § 19.30(a).

### 2. Secretary's Burden to Show Compliance

Accordingly, because the Court holds that the presumption of regularity is rebutted, the burden shifts to the Secretary to establish that the 1994 SOC was mailed to the appellant as required by section 7105(d)(3) and *YT*, *supra*, or that the appellant actually received the 1994 SOC, *see Ashley II*, 2 Vet.App. at 309. In neither his brief nor at oral argument has the Secretary made any effort to carry that burden. Moreover, based on the Court's holding that VA's initial mailing of the SOC to the appellant in November 1994 was to an incorrect address, the Secretary cannot show compliance with his statutory mailing obligation, and the Court is not satisfied that, based on the ROA, there is evidence of receipt by the appellant of the 1994 SOC.

This Court has jurisdiction to address issues not addressed by the Board as long as the Court "has jurisdiction over the veteran's claim", *Maggitt v. West*, 202 F.3d 1370, 1377 (Fed. Cir. 2000), and should decide whether to exercise that jurisdiction based on "a case-by-case analysis of the competing individual and institutional interests, including whether [this] Court should use its authority to 'remand the matter, as appropriate,' to the Board." *Id.* at 1378 (quoting 38 U.S.C. § 7252(a)). The Court concludes that it is better situated than the Board to decide whether the Secretary has met his burden because the Secretary is not a party who appears before the Board and the Secretary's burden in this type of adversarial proceeding does not fit the VA adjudication system where the adjudicator would also have to carry the burden of showing compliance with the statute. *See Vanerson v. West*, 12 Vet.App. 254, 261 (1999) (noting that "typical parley of 'basic facts' and 'counterproof' involved with presumptions in an adversarial proceeding does not fit the VA adjudication system where the very adjudicator, who is charged with assisting in the development of the claim, would also bear the burden of rebutting the presumption").

Because the Secretary failed to show that the November 1994 SOC was mailed as required by section 7105(d)(3), § 19.30, and *YT*, *supra*, or that the appellant actually received the November 1994 SOC, *see Ashley II*, *supra*, the Court holds that the 60-day period for filing a Substantive Appeal with the Board under section 7105(d)(3) was tolled and did not begin to run again until the

16

defect was cured on June 19, 2000, by the RO's mailing a copy of the SOC to the appellant at her correct address. *Cf. Piano*, 5 Vet.App. at 27 (concluding that Secretary failed to show that BVA decision was mailed in compliance with section 7104(e) and holding that 120-day judicial-appeal period of section 7266(a) was tolled and did not begin to run again until defect in mailing was cured). Because the appellant filed her Substantive Appeal on June 27, 2000, which was within 60 days after her receipt of the SOC mailed to her on June 19, 2000, her Substantive Appeal to the Board was timely filed, and the Court will thus reverse the Board's determination to the contrary. Hence, any error by the Board in failing to discuss the applicability of the VCAA – that is, whether the appellant was entitled, prior to the adjudication of her claim, to additional notice or assistance from VA regarding the evidence necessary to rebut the presumption of regularity – is moot.

### III. Conclusion

On the basis of the foregoing analysis, the ROA, the parties' pleadings, and oral argument, the Court reverses the October 31, 2001, Board decision that determined that the June 27, 2000, Substantive Appeal to the Board was not timely filed and remands the matter for expeditious further development and issuance of a decision in connection with the appellant's EED claim regarding her DIC award, supported by an adequate statement of reasons or bases, *see* 38 U.S.C. §§ 1310, 5100-5103, 5103A, 5106, 5107, 7104(a), (d)(1); 38 C.F.R. § 3.159(b), (c) (2002); *Charles v. Principi*, 16 Vet.App. 370, 374 (2002); *Quartuccio v. Principi*, 16 Vet.App. 183, 187 (2002); *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991), all consistent with this opinion and in accordance with section 302 of the Veterans' Benefits Improvements Act of 1994, Pub. L. No. 103-446, § 302, 108 Stat. 4645, 4658 (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide for "expeditious treatment" for claims remanded by BVA or the Court) [hereinafter VBIA § 302]; *see Vargas-Gonzalez v. Principi*, 15 Vet.App. 222, 225-30 (2001) (holding that VBIA § 302 applies to all elements of claim remanded by Court or Board), and with all applicable law and regulation. *See Allday v. Brown*, 7 Vet.App. 517, 533-34 (1995). On remand, the appellant will be free to submit additional evidence and argument on the remanded claim in accordance with *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order) (concluding that appellant is entitled, until 90 days after Board mails postremand notice to appellant, to submit additional evidence and argument

17

or to request hearing on appeal, at which appellant may submit new evidence and argument), and the Board is required to consider any such evidence and argument. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). A remand by this Court or by the Board confers on an appellant the right to VA compliance with the terms of the remand order and imposes on the Secretary a concomitant duty to ensure compliance with those terms. *See Stegall v. West*, 11 Vet.App. 268, 271 (1998). A final decision by the Board following the remand herein ordered will constitute a new decision that, if adverse, may be appealed to this Court only upon the filing of a new NOA with the Court not later than 120 days after the date on which notice of the Board's new final decision is mailed to the appellant. *See Marsh v. West*, 11 Vet.App. 468, 472 (1998).

REVERSED AND REMANDED.